IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK MORTIMER,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>BANK OF AMERICA, N.A.,<br><br>　　　　　Defendant. | Case No.: C-12-01959 JCS<br><br>**AMENDED ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, DISMISSING CAUSES OF ACTION 1, 3, AND 4 WITHOUT PREJUDICE, DISMISSING CAUSES OF ACTION 2 AND 5-9 WITH PREJUDICE** |

## I.　INTRODUCTION[1]

Plaintiff Mark Mortimer ("Plaintiff") brings this action against Defendant Bank of America, N.A., ("Defendant")[2] seeking redress for Defendant's alleged inaccurate reporting of his discharged debt. Presently before the Court is Defendant's Motion for Judgment on the Pleadings ("Motion"). The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). The Court finds that the Motion is appropriate for decision without oral argument. The hearing on the Motion scheduled for December 21, 2012 at 9:30 am is vacated. For the reasons stated below, the Court grants Defendant's Motion. Plaintiff's first, third, and fourth causes of action

---

[1] In light of this Amended Order, Plaintiff's Motion for Leave to File a Motion for Reconsideration of this Court's previous Order is denied.
[2] In its motion, Defendant asserts that it has been improperly named in this action. Defendant states that FIA Card Services, N.A., a subsidiary of Bank of America Corporation, is the proper entity for the purposes of Plaintiff's credit card related claims. Nevertheless, Defendant's papers refer to Bank of America as the acting party throughout.

are dismissed with leave to amend. Plaintiff's remaining causes of action are dismissed with prejudice.

## II. BACKGROUND

### A. The Complaint

On November 3, 2009 Plaintiff filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Northern District of California. Complaint at ¶ 12. On February 8, 2010, the court granted a discharge of all dischargeable debts pursuant to 11 U.S.C. Section 727. *Id.* at ¶ 15 and Ex. B. The bankruptcy discharged Plaintiff's debt to Defendant. *Id.*

On April 21, 2011, Plaintiff sent a letter to Experian, a credit reporting agency, claiming that several accounts discharged through Plaintiff's bankruptcy were being inaccurately reported, and requesting an investigation of those reports. *Id.* at ¶ 16 and Ex. A. As to Plaintiff's account with Defendant, Plaintiff stated, "This account was included in my bankruptcy. This account should not be reporting a high balance, lates, charge-offs, and should be reflecting a zero balance. Remove these delinquent items now." *Id.* at Ex. A.

On June 4, 2011, Plaintiff received a new copy of his Experian credit report ("Experian Report") to verify that the alleged inaccuracies were corrected. *Id.* at ¶ 17 and Ex. C. This report states that the account in question was "Discharged through Bankruptcy Chapter 7," had a current account balance of $0, and was "closed" in the months of December 2009 and January 2010. *Id.* at Ex. C.

On March 15, 2012, Plaintiff obtained a copy of his Service 1st credit report ("Service 1st Report"). *Id.* at ¶ 17 and Ex. D. The Service 1st credit report is a compilation of credit reports from the three major credit reporting agencies, Experian, TransUnion, and Equifax. *Id.* The Service 1st Report indicates that its data from Experian show that the account in question was "Closed at Consumer's Request; Bankruptcy Chapter 7," had a current account balance and a past due balance of $0, and that the account was 30 days past due in December 2009 and 60 days past due in January 2010. *Id.* at Ex. D. The Service 1st data from TransUnion and Equifax are the same except that they do not show any indication that the account was ever past due. *Id.*

Based on the above, Plaintiff alleges that Defendant re-reported disputed information, that Plaintiff's account was open and delinquent in December 2009 and January 2010, to Experian even though Plaintiff had filed for bankruptcy. *Id*. at ¶ 18. Plaintiff further alleges that Defendant failed to report that this information was disputed. *Id*. In support of this allegation, Plaintiff states that he was not required to make any payments to Defendant after filing a bankruptcy petition. *Id*. at ¶ 31.

Based on these facts, Plaintiff enumerates nine causes of action:

1) <u>Violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b)</u>: Plaintiff claims that Defendant violated Section 1681-2(b)(1)(A) by failing to reasonably investigate Plaintiffs dispute after receiving notice from Experian. *Id*. at ¶ 30. Plaintiff claims that Defendant violated Section 1681-s(b)(1)(E) by failing to discover and remove the alleged inaccuracies and by failing to report that the account was in dispute. *Id*. at ¶¶ 33, 35. Plaintiff alleges that Defendant's failures were "intentional and in reckless disregard of its duty to refrain from reporting inaccurate information." *Id*. at 36. Consequently, Plaintiff argues, Defendant "willfully and negligently failed to comply with its duty to investigate Plaintiff's dispute under 15 U.S.C. [§§] 1681[n] & [1681o]." *Id*. Plaintiff alleges damages including the costs of reviewing credit reports from all three consumer reporting agencies, traveling to and from counsel's office, sending demand letters, humiliation, anxiety, loss of sleep, embarrassment, emotional distress, and defamation of character. *Id* at ¶¶ 37-38.[3]

2) <u>Violation of the California Song-Beverly Credit Card Act of 1971 ("Song-Beverly Act"), Cal. Civ. Code § 1747, *et seq.*</u>: Plaintiff claims that Defendant violated the Song-Beverly Act by knowingly making untrue communications relating to Plaintiff's credit worthiness to Experian, TransUnion, and Equifax. *Id*. at ¶¶ 41-44. To support this claim, Plaintiff alleges that Defendant mischaracterized debt on the account as delinquent after Plaintiff filed for bankruptcy. *Id*. at ¶¶ 41-42. Plaintiff alleges damages including the costs of reviewing credit reports from all three consumer reporting agencies, traveling to and from counsel's office, sending demand letters, difficulty obtaining credit, humiliation, anxiety, loss of sleep, embarrassment, emotional distress, and defamation of character. *Id*. at ¶¶ 45-46.

---

[3] A portion of paragraph 38 appears to have been inadvertently omitted from the Complaint.

3) <u>Violation of the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785.25(a)</u>: Plaintiff makes the same allegations concerning the reporting of, and failure to correct, inaccuracies in connection with his CCRAA claim as he does with his FCRA claim, discussed above. *Id.* at ¶¶ 50-54. Plaintiff alleges damages including the costs of reviewing credit reports from all three consumer reporting agencies, traveling to and from counsel's office, sending demand letters, difficulty seeking necessary products and services from vendors, difficulty obtaining credit, humiliation, anxiety, loss of sleep, embarrassment, emotional distress, and defamation of character. *Id*. at ¶¶ 55-56.

4) <u>Violation of the Unfair Business Practices Act ("UCL"), Cal. Bus. & Prof Code § 17200</u>: Plaintiff claims that Defendant's CCRAA violation was an unlawful business practice constituting a violation of the UCL. *Id*. at ¶ 62. Plaintiff also appears to rely on the alleged violations of the FCRA and the Song-Beverly Act as predicate offenses. *Id*. at ¶ 64.

5) <u>Libel, Cal. Civ. Code § 45</u>: Plaintiff alleges that Defendant, without legal cause, allows credit reporting agencies to report that Plaintiff currently owes money to Defendant and is delinquent in not paying this alleged debt. *Id*. at ¶ 67. Plaintiff further alleges that all who see the reports will understand that he is not creditworthy. *Id*. at ¶ 68. As a result, Plaintiff alleges damage to his good name, reputation, and credit rating. *Id*. at ¶ 69. Plaintiff alleges that the reports were widely disseminated in the financial community. *Id*. at ¶ 71. Plaintiff seeks punitive damages because Defendants published the report with knowledge of its falsity. *Id*. at ¶ 72. Plaintiff also alleges that the malicious publication was made in retaliation for filing a Chapter 7 petition. *Id*. at ¶ 73.

6) <u>Intentional Infliction of Emotional Distress</u>: Plaintiff alleges that Defendant's conduct, described above, was so severe, outrageous, and intentional that Plaintiff suffered humiliation, embarrassment, anxiety, loss of sleep, emotional distress, pain and suffering, and defamation of character. *Id*. at ¶ 77.

7) <u>Negligent Infliction of Emotional Distress</u>: Plaintiff alleges that Defendant's conduct, described above, amounted to negligence and as a result Plaintiff suffered humiliation, embarrassment, anxiety, loss of sleep, emotional distress, pain and suffering, and defamation of character. *Id*. at ¶ 81.

8) <u>Deceit, Cal. Civ. Code § 1710</u>:  Plaintiff alleges that Defendant is attempting to collect on a debt against the Plaintiff when it has no reasonable grounds for doing so.  *Id*. at ¶ 86.

9) <u>Constructive Fraud, Cal. Civ. Code § 1573</u>:  Plaintiff alleges that Defendant's conduct, described above, breached its fiduciary duty to Plaintiff and gained an advantage against plaintiff.  *Id*. at ¶ 91.

**B.    The Motion and Opposition**

Defendant moves for judgment on the pleadings on the grounds that Plaintiff's Complaint fails to state a claim on which relief can be granted.  Defendant notes that the only difference between the Experian Report and the Service 1st Report is that the latter shows delinquencies in December 2009 and January 2010, the period during which Plaintiff's bankruptcy was pending but not discharged.  Defendant's Motion for Judgment on the Pleadings ("Motion") at 6.  Both reflect the Chapter 7 bankruptcy and a zero balance on Plaintiff's accounts with Defendant.  *Id*.  Defendant argues that, as a matter of law, it did not make any inaccurate reports because a debt remains valid prior to discharge and can be reported during bankruptcy.  *Id*. (citing *Mortimer v. JP Morgan Chase Bank, N.A.*, 2012 WL 3155563 (N.D. Cal. Aug. 2, 2012); *Evans v. Mercedes Benz Fin. Servs., LLC*, 2011 U.S. Dist. LEXIS 79404, at *7 (E.D. Mich. 2011)).  Because Defendant argues that there was no inaccurate or incomplete reporting, it argues that Plaintiff had no grounds to dispute Defendant's reporting.  *Id*. at 8-9 (citing *Mortimer*, 2012 WL 3155563, at *3).  For this reason, Defendant contends that Plaintiff's FCRA and CCRAA claims fail.  *Id*. at 4-10.

As to Plaintiff's remaining claims, Defendant argues that each is preempted by FCRA.  *Id*. at 10-15.  As to Plaintiff's UCL claim, Defendant argues that even if that claim is not preempted it will fail either because Plaintiff has not established a sufficient injury to create standing or because each predicate claim fails for the reasons expressed above.  *Id*. at 15-17.

In opposition, Plaintiff clarifies his position that the discrepancy between the Experian Report and the Service 1st Report demonstrates that Defendant corrected its allegedly inaccurate reporting, but then re-reported the allegedly inaccurate information.  Plaintiff's Opposition to Defendant's Motion for Judgment on the Pleadings ("Opposition") at 2.  Plaintiff further argues that he was not obligated to pay Defendant during the pendency of the bankruptcy action because the credit account

1    was current and closed. *Id*. at 2, 7 (citing 11 U.S.C. § 362(a)(6); *In re Sommersdorf*, 139 B.R. 700,
2    702 (Bankr. S.D. Ohio 1992); *In re Burgess*, 2007 WL 130818, at *4 n.2 (Bankr. E.D. Va. Jan. 12
3    2007); *In re Leutdke*, 2008 Bankr. LEXIS 2118, at *14 (Bankr. E.D. Wis. July 31, 2008)). Because
4    reporting overdue payments indicates that the credit account is active and collectible at the time of the
5    report, Plaintiff argues that reporting overdue payments at a time the credit account was current and
6    closed is inaccurate and materially misleading. *Id*. at 8 (citing *Sommersdorf*, 139 B.R. at 170 [sic]; *In
7    re Singley*, 233 B.R. 170, 173 (Bankr. N.D. Ga. 1999)). Alternatively, Plaintiff argues that, where two
8    reports are inconsistent, one report must be inaccurate. *Id*. at 11-12 (citing *Philbin v. TransUnion
9    Corp.*, 101 F.3d 957, 960 (3d Cir. 1996)). As a final alternative, Plaintiff contends that the accuracy
10   of his credit report is an issue of material fact unsuitable for resolution on a motion for judgment on
11   the pleadings. *Id*. at 6 (citing *Montgomery v. PNC Bank, N.A.*, 2012 U.S. Dist. LEXIS 120704, at *7-
12   *8 (N.D. Cal. Aug. 24, 2012)). On these bases, Plaintiff contends that he has stated a claim for
13   violation of the FCRA and the CCRAA.
14   Plaintiff also argues that he has alleged sufficient standing to bring a UCL claim. *Id*. at 18.
15   Moreover, Plaintiff contends that his UCL claim, relying on the CCRAA as predicate unlawful
16   conduct, is not preempted because it does not impose any additional substantive duties on Defendant.
17   *Id*. at 18-19 (citing *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1164 (9th Cir. 2009)).
18   Plaintiff makes no mention of the other six claims alleged in his Complaint.

**III.   ANALYSIS**

   **A.    Legal Standard**

Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief … shall contain … a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, a party may move for judgment on the pleadings "[a]fter the pleadings are closed-but early enough not to delay trial." Fed. R. Civ. P. 12(c). The legal standard for Rule 12(c) is virtually identical to the standard for a motion to

dismiss under Rule 12(b)(6). *Costa v. Travelers Commercial Ins. Co.*, 2012 WL 3670653 (N.D. Cal. Aug. 24, 2012) (citing *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)).

In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and takes "all allegations of material fact as true and construe(s) them in the lights most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The factual allegations must be definite enough to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. However, a complaint does not need detailed factual allegations to survive dismissal. *Id.* Rather, a complaint need only include enough facts to state a claim that is "plausible on its face." *Id.* at 570. That is, the pleadings must contain factual allegations "plausibly suggesting (not merely consistent with)" a right to relief. *Id.* at 557 (noting that this requirement is consistent with Fed. R. Civ. P. 8(a)(2), which requires that the pleadings demonstrate that "the pleader is entitled to relief").

"A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Moreover, the court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly

be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

### B. Nature of Debt during the Pendency of a Bankruptcy Action

The parties dispute whether Defendant reported inaccurate information when it reported that Plaintiff's account was delinquent during the pendency of his Chapter 7 bankruptcy. Plaintiff contends that his account was closed and uncollectable during that period for two reasons: (1) the bankruptcy code provides an automatic stay on collections during the bankruptcy proceedings; and (2) the bankruptcy court's order granting him a discharge of his debts relates back to the date he filed for bankruptcy. Therefore, Plaintiff argues, reporting his account as delinquent during that time period was misleading. Defendant counters that Plaintiff was behind in payments during the pendency of the proceeding, so reporting that information is accurate. Whether the reports contained inaccurate information is a question of law. For the reasons stated below, the Court concludes that the reported information, as alleged, was accurate.

#### 1. Background Law

##### a. Automatic Stay

An individual may voluntarily initiate Chapter 7 bankruptcy proceedings pursuant to 11 U.S.C. Section 301. Initiation of such proceedings "operates as a stay … of … any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362. With the exception of an act against property of the estate, the automatic stay in a Chapter 7 bankruptcy concerning an individual terminates at the time a discharge is granted or denied, if not sooner. 11 U.S.C. § 362(c)(2)(C). Several courts, including two in this district involving closely analogous factual situations, have held that reports, after discharge, of delinquencies in payment during the bankruptcy proceedings are not "incomplete or inaccurate" information for the purposes of the FCRA. *Giovanni v. Bank of America, N.A.*, 2012 WL 6599681, at *5-*6 (N.D. Cal. Dec. 18, 2012); *Mortimer*, 2012 WL 3155563 at *3-*4; *see also Harrold v. Experian Information Solutions, Inc.*, 2012 WL 4097708, at *4 (N.D. Cal. Sept. 17, 2012); *Evans*, 2011 WL 2936198 at *2-3 (Plaintiff failed to state a claim under the FCRA because the complaint, alleging wrongful reporting of accounts on the basis that they had been discharged through Chapter 7 Bankruptcy, predated the

discharge of the debts through bankruptcy); *In re O'Connell*, 2008 WL 5046496, at *1 (Bankr. D. Ariz. Oct. 29, 2008) (discharge of debts through bankruptcy acts only as a bar to a creditor's right to enforce debt; a creditor's derogatory remarks to its credit bureaus are not inaccurate if what it is reporting are simply the facts of non-payment and prior delinquencies). This Court agrees that the FCRA does not prohibit the accurate reporting, after discharge, of debts that were delinquent during the pendency of the bankruptcy action. Whether or not the debt was collectible, the debt existed. Reporting this information is neither inaccurate nor misleading.

### b. Relation Back

Plaintiff argues that the bankruptcy discharge relates back to the initial filing. Opposition at 9 n.10. For that reason, Plaintiff argues that after discharge he was no longer delinquent during the pendency of the bankruptcy proceeding. *Id*. Therefore, any report made after the discharge stating that Plaintiff was delinquent before the discharge is factually inaccurate. *Id*.

"[T]he commencement of a voluntary case under a chapter of [Title 11] constitutes an order for relief under such chapter." 11 U.S.C. § 301(b). With certain exceptions, a discharge:

> (1) voids any judgment at any time obtained, to the extent that such judgment is determination of the personal liability of the debtor with respect to any debt discharged under section 727 … of this title, whether or not discharge of such debt is waived; (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and (3) operates as an injunction against the commencement or continuation of an action, the employment process, or an act, to collect or recover from, or offset against, [specified property] that is acquired after the commencement of the case…"

11 U.S.C. § 524(a). Thus, the effect of a bankruptcy is to discharge the debtor's debts by eliminating the personal liability of the debtor to its creditors and prevent future collection efforts. *Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1997); *In re Lewis*, 506 F.3d 927, 932 (9th Cir. 2007). The debtor is under no legal obligation to pay the discharged debts. Subject to certain exceptions, discharge pursuant to Section 727(a) "discharges the debtor from all debts that arose before the date of the order for relief…" 11 U.S.C. § 727(b). However, this does not change the underlying fact that, during the pendency of the bankruptcy, the account was delinquent. *See In re*

9

*O'Connell*, 2008 WL 5046496, *1. Thus, it is accurate to report, after discharge, that a debtor was delinquent during the pendency of bankruptcy because at that time the debt existed. To avoid presenting a misleading picture, the creditor must also report that the account was discharged through the bankruptcy and the outstanding balance on that account is zero.

### 2. Application of Law to Facts

The report described in Plaintiff's Complaint contained factually accurate information. According to the facts pled by the Plaintiff, the account in question was "Closed at Consumer's Request; Bankruptcy Chapter 7" and has a current account balance and a past due balance of $0. Defendant reported all of this information. Plaintiff does not allege that his account was up to date in December 2009 or January 2010. Thus, Defendant reported accurate information when it reported that his account was delinquent in those months.

## C. FCRA

Plaintiff's claim under the FCRA fails because Defendant reported accurate information.

### 1. Background Law

The FCRA was enacted to promote the equitable use of consumer credit information and to ensure fairness and accuracy within the credit reporting system. 15 U.S.C. § 1681. To achieve this purpose, the FCRA imposes certain duties on the furnishers that provide credit information to credit reporting agencies ("CRA"). *Gorman*, 584 F.3d at 1153.

Section 1681s-2(a) requires furnishers "to provide accurate information." 15 U.S.C. § 1681s-2(a). Specifically, subsection (a) prohibits furnishers from reporting information with actual knowledge of errors, requires furnishers to correct and update information, and requires furnishers to provide notice of disputes and closed accounts, among other requirements. 15 U.S.C. § 1681s-2(a)(1)-(3). Section 1681s-2(b) establishes the duties of furnishers after receiving notice of a dispute. 15 U.S.C. § 1681s-2(b). Upon receiving notice of a dispute from a CRA, the furnisher shall (1) conduct an investigation of the disputed information; (2) review all relevant information provided by the agency; (3) report the results of the investigation to the CRA; (4) if the results of the investigation reveal that the information is incomplete or inaccurate, report those results to all other CRAs to which the person furnished information; and (5) if an item of information disputed by a consumer is found to

be inaccurate or incomplete or cannot be verified after reinvestigation, for purposes of reporting to a consumer reporting agency only, as appropriate, modify, delete, or permanently block reporting of that item of information. 15 U.S.C. § 1681s-2(b)(1). A furnisher does not report incomplete or inaccurate information by failing to report a meritless dispute. *Gorman*, 584 F.3d at 1163.

The FCRA confers a private right of action upon consumers and allows them to sue a furnisher of credit information if such furnisher willfully or negligently fails to comply with any of the duties enumerated in section 1681s-2(b). *See Gorman*, 584 F.3d at 1154; 15 U.S.C. §§ 1681n, 1681o. A furnisher's duties "arise only after the furnisher receives notice of dispute from a CRA." *Gorman*, 584 F.3d at 1154. "To state a claim under the FCRA against the Defendants as a furnisher of credit information, the Plaintiff must allege that: (1) he contacted the CRA; (2) the CRA pursued the claim; and (3) the CRA contacted the Defendants regarding the dispute, triggering the Defendants' duty to investigate." *King v. Bank of America, N.A.*, 2012 WL 4685993, at *5 (N.D. Cal. Oct. 1, 2012) (citing *Roybal v. Equifax*, 405 F.Supp.2d 1177, 1180 (E.D. Cal. 2005); *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002)). Duties imposed on furnishers under subsection (a) are enforceable only by federal or state agencies. *Gorman*, 584 F.3d at 1154.

### 2. Application of Law to Facts

The facts, when construed in the light most favorable to Plaintiff and taking Plaintiff's allegations as true, are as follows. After discovering inaccuracies in his credit report, Plaintiff sent Experian the April 21, 2011 letter requesting an investigation. Experian brought the matter to Defendant's attention, and Defendant thereafter reported the account in question was "Discharged through Bankruptcy Chapter 7," had a current account balance of $0, and was "closed" in the months of December 2009 and January 2010, as demonstrated by the Experian Report. At some time thereafter, Defendant adjusted its report to Experian to state that the account in question was "Closed at Consumer's Request; Bankruptcy Chapter 7," had a current account balance and a past due balance of $0, and that the account was 30 days past due in December 2009 and 60 days past due in January 2010, as demonstrated by the Service 1st Report.[4] As discussed above, this information was factually

---

[4] Defendant contends that the Service 1st Report does not support the inference that Defendant modified its reporting to Experian. Defendant argues that the Service 1st Report may be based on an Experian report that pre-dated the one in Exhibit C. Moreover, Defendant argues that because it does not report directly to Service 1st, it should not be liable for any of their mistakes. These arguments raise issues that are not appropriately resolved in a 12(c) motion.

accurate and not misleading. Thus, Plaintiff's dispute was without merit. Plaintiff's FCRA claim is dismissed with leave to amend.

### D. CCRAA

#### 1. Background Law

California Civil Code section 1785.25(a) provides: "A person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." Cal. Civ. Code § 1785.25(a). The CCRAA differs from the FCRA in that it provides a private right of action to enforce this provision. Cal. Civ. Code § 1785.25(g); *Gorman*, 584 F.3d at 1171.

#### 2. Application of Law to Facts

Plaintiff's CCRAA claim is dismissed with leave to amend because, as discussed in the section pertaining to the FCRA, Plaintiff has failed to allege that Defendant made an incomplete or inaccurate report.

### E. UCL

#### 1. Background Law

##### a. Preemption

"Through the FCRA, Congress has established a scheme of uniform requirements regulating the use, collection, and sharing of consumer credit information." *Grantham v. Bank of America, N.A.*, 2012 WL 5904729, at *4 (N.D. Cal. Nov. 26, 2012) (quoting *Roybal*, 405 F.Supp.2d at 1178). The FCRA provides that, in general, "[n]o requirement or prohibition may be imposed under the laws of any State … with respect to any subject matter regulated under … section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies …" 15 U.S.C. § 1681t(b)(1)(F).

Section 1785.25(a) of the CCRAA is expressly saved from preemption. 15 U.S.C. § 1681t(b)(1)(F)(ii). But its private enforcement provisions, contained in Sections 1785.25(g) and 1785.31 are not. *Gorman*, 584 F.3d at 1170. In *Gorman*, the Ninth Circuit held that Sections 1785.25(g) and 1785.31 were not preempted because they do not impose a "requirement or prohibition" with respect to the subjects regulated by Section 1681s-2. *Id.* at 1171. The Ninth Circuit

reasoned that "these sections merely provide a vehicle for private parties to enforce other sections." *Id*. Relying on this reasoning, several Ninth Circuit district courts have concluded that claims alleging a UCL predicated on a violation of 1785.25(a) are not preempted by the FCRA. *See Subhani v. JPMorgan Chase Bank, N.A.*, 2012 WL 1980416, at *5 (N.D. Cal. June 1, 2012) (citing cases); *King*, 2012 WL 4685993 at *8 n.8 (N.D. Cal. Oct. 1, 2012). This Court agrees.

### b. Standing

A claim for unfair competition under the UCL may be brought "by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. Therefore, to establish standing under the UCL a plaintiff must "(1) establish a loss or deprivation of money sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice … that is the gravamen of the claim." *Lawther v. OneWest Bank, FSB*, 2012 WL 298110, at *23 (N.D. Cal. Feb. 1, 2012) (quoting *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 337, 120 Cal.Rptr.3d 741, 246 P.3d 877 (2011)).

### c. UCL Violation

The UCL prohibits "unfair competition," which is defined as any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. In general, a plaintiff may establish a violation under any one of these prongs. But, as discussed above, Plaintiff's UCL claim only survives preemption to the extent it is predicated on a violation of 1785.25(a). Thus, to state a cause of action under the UCL, Plaintiff must allege facts that show a violation of that law. *See People v. McKale*, 25 Cal. 3d 626, 635, 159 Cal.Rptr. 811, 602 P.2d 731 (1979).

### 2. Application of Law to Facts

Plaintiff's alleged a violation of Section 1785.25(a) as predicate unlawful conduct to their UCL claim. Complaint at ¶ 62. This claim is not preempted.

Plaintiff's Complaint can be read as alleging that Defendant's violation of the CCRAA caused him to suffer a diminished credit score and preventing him from obtaining products and services from vendors and additional credit from other agencies. Complaint at ¶ 56.[5] This is an economic injury

---

[5] This paragraph is incorporated by reference into the UCL section of the Complaint. Complaint at ¶ 58.

sufficient to grant him standing. *See King*, 2012 WL 4685993 at *8 (citing *White v. Trans Union LLC*, 462 F.Supp.2d 1079, 1080, 1084 (C.D. Cal. 2006)).

As discussed above, Plaintiff failed to make out a cause of action under the CCRAA. Therefore, his UCL claim is dismissed with leave to amend.

### F. Preemption of Remaining Claims

In its Motion, Defendant argues that Plaintiff's remaining claims are preempted by FCRA because they all derive from issues governed solely by FCRA: Defendant's allegedly inaccurate reporting of information to CRAs and Defendant's allegedly inaccurate investigation and response to Plaintiff's dispute regarding the reporting of his account.[6] The Court agrees.

#### 1. Background Law

The FCRA contains two separate preemption sections. Section 1681h(e) bars state claims for defamation, invasion of privacy, and negligence absent malice or willful intent to injure a consumer. 15 U.S.C. § 1681h(e). In 1996, Congress added a second preemption provision to the FCRA. *Subhani*, 2012 WL 1980416, at *3. As noted above, that provision provides, in relevant part, that "[n]o requirement or prohibition may be imposed under the laws of any State … with respect to any subject matter regulated under … section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies …" 15 U.S.C. § 1681t(b)(1)(F).

District courts have struggled to reconcile the two provisions because Section 1681h(e) appears to permit certain state law tort claims, whereas 1681t(b)(1)(F) appears to preempt both state statutory and common law claims. *Subhani*, 2012 WL 1980416 at *3. Although the Ninth Circuit has not addressed the issue, both the Second and Seventh Circuits have concluded that Section 1681t(b)(1)(F) sweeps more broadly than Section 1681h(e), preempting all statutory and common law actions within its purview. *See Purcell v. Bank of America*, 659 F.3d 622, 624-25 (7th Cir. 2011); *Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 48 (2d Cir. 2011); *Subhani*, 2012 WL 1980416 at *3. This Court joins a number of district courts in this circuit in adopting this approach. *See Subhani*, 2012 WL 1980416 at *4 (collecting cases).

//

---

[6] Specifically, this includes Plaintiff's claims for violation of the Song-Beverly Act, libel, intentional infliction of emotional distress, negligent infliction of emotional distress, deceit, and constructive fraud.

### 2. Application of Law to Facts

Each of Plaintiff's remaining statutory and common law state law claims are predicated on Defendant's allegedly inaccurate reporting, governed by Section 1681s-2. These claims are preempted. Thus, Defendant's motion to dismiss Plaintiff's second and fifth through ninth causes of action is granted with prejudice.

## IV. CONCLUSION

Plaintiff's FCRA, CCRAA, and UCL claims are dismissed with leave to amend within 30 days of the date of this Order. Plaintiff's remaining claims are dismissed with prejudice.

IT IS SO ORDERED.

Dated: January 3, 2013

_____

JOSEPH C. SPERO
United States Magistrate Judge