IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARK MORTIMER,

    Plaintiff,

v.

BANK OF AMERICA, N.A.,

    Defendant.

Case No.: C-12-01959 JCS

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE FAC**

## I.   INTRODUCTION

Plaintiff Mark Mortimer ("Plaintiff") brings this action against Defendant Bank of America, N.A., ("Defendant")[1] seeking redress for Defendant's alleged inaccurate reporting of his discharged debt. Presently before the Court is Defendant's Motion to Dismiss ("Motion"). The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). A hearing on the Motion was held on April 5, 2013 at 9:30 am. For the reasons stated below, the Court grants Defendant's Motion.

## II.   REQUEST FOR JUDICIAL NOTICE

The standard for judicial notice is set forth in Rule 201 of the Federal Rules of Evidence, which allows a court to take judicial notice of an adjudicative fact not subject to "reasonable dispute," either because it is "generally known within the territorial jurisdiction of the trial court" or it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. As a general rule, the court "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *U.S. v. Corinthian Colleges*, 655 F.3d

---

[1] In its motion, Defendant asserts that it has been improperly named in this action. Defendant states that FIA Card Services, N.A., a subsidiary of Bank of America Corporation, is the proper entity for the purposes of Plaintiff's credit card related claims. Nevertheless, Defendant's papers refer to Bank of America as the acting party throughout.

984, 998-99 (9th Cir. 2011) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). However, the court may consider unattached evidence on which the complaint "necessarily relies" if: "(1) the complaint refers to the document; (2) the document is central to plaintiff's claim; and (3) no party questions the authenticity of the document." *Id*. at 999 (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)). In addition, the court may take judicial notice of "matters of public record," but not facts that may be "subject to reasonable dispute." *Id*. (citing *Lee*, 250 F.3d at 689).

Defendant requests judicial notice of (1) the exhibits attached to Plaintiff's original complaint in this action, including the May 10, 2011 Experian credit report ("Experian Report") and the March 15, 2012 Service 1st Information System credit report ("Service 1st Report"); and (2) copies of Bank of America's credit card account statements ("account statements") for the months of November 2009 through February 2010. Plaintiff objects to consideration of the May 10, 2011 Experian credit report, as attached to the original complaint, because it is lacking a relevant page, which Plaintiff provides, and because facts pertaining to the account balance are in dispute.

The Court will consider the Service First Report because the First Amended Complaint ("FAC") necessarily relies on it as the basis for the alleged inaccurate reporting and (1) the complaint refers to the report; (2) the report is central to Plaintiff's claim; and (3) no party has questioned the authenticity of the report. The Court takes judicial notice of the copy of the Experian Report attached to the Complaint as a matter of public record, but does not take judicial notice of facts contained therein that may be subject to reasonable dispute. The Court cannot consider, or take judicial notice of, the account statements from November 2009 to February 2010. Defendant argues that judicial notice is proper because Plaintiff alleges the content of the statements and the authenticity of the documents is not questioned. This is misleading. The FAC does not refer to the account statements, which are offered because they contain evidence contradicting a factual allegation. Finally, Defendant makes no argument that Rule 201 is satisfied with respect to the records in question.

Plaintiff attaches what he asserts is an excerpt from the Consumer Data Industry Association's 2011 Credit Reporting Resource Guide to the Declaration of Elliot Gale in Support of Plaintiff's Opposition ("Gale Declaration"), Ex. A. Plaintiff does not request judicial notice of the excerpt and

2

the Court does not consider it in resolving this Motion, as it is provided merely to bolster factual allegations made in the FAC. *See* FAC, ¶ 20.

### III. BACKGROUND

#### A. The FAC

On November 3, 2009 Plaintiff filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Northern District of California. FAC, ¶ 12. On February 8, 2010, the court granted a discharge of all dischargeable debts pursuant to 11 U.S.C. Section 727. *Id*. at ¶ 14. The bankruptcy discharged Plaintiff's debt to Defendant. *Id*.

On April 19, 2011, Plaintiff received reports from Experian, Transunion, and Equifax to ensure accurate reporting. *Id*. at ¶ 15. The reports showed that Bank of America reported overdue payments on Plaintiff's credit account to all three consumer reporting agencies ("CRA") – Experian, Transunion, and Equifax – in December and January 2010. *Id*. Plaintiff alleges that he was up to date on payments through November 2009, the month he filed for bankruptcy. *Id*. at ¶ 18. Plaintiff alleges that when he filed for bankruptcy the status quo between the parties was frozen by operation of the automatic stay. *Id*. (citing *Sternberg v. Johnson*, 582 F.3d 1114, 1123 (9th Cir. 2009)). Therefore, Plaintiff alleges that he was never late on payments. *Id*. Regardless, Plaintiff alleges that this reporting was inaccurate for four other reasons: (1) overdue payments are only reported when an account is collectible, and during bankruptcy the account was not collectible; (2) pursuant to the bankruptcy automatic stay the only permitted negative credit reporting pertains to non-dischargeable domestic support obligations, Plaintiff suggests that this reporting indicates that the debt involved a non-dischargeable domestic support obligation; (3) Defendant subscribes to the Metro 2 format for credit reporting promulgated by the Consumer Data Industry Association ("CDIA") and, pursuant to that format, Defendant should have entered "no data" in the payment history section during the pendency of bankruptcy; and (4) after the bankruptcy discharge Plaintiff was retroactively no longer personally obligated to pay Defendant in December 2009 and January 2010. *Id*. at ¶¶ 17, 19-21.

On May 3, 2011, Plaintiff sent a written notice to Experian, Transunion, and Equifax requesting an investigation of the information reported on Plaintiff's account and disputing the accuracy of the overdue payment notations. *Id*. at ¶ 16. That month, each CRA corrected and

removed the overdue payments. *Id*. at ¶¶ 22-24. The investigation report indicates that Defendant reported Plaintiff as up to date on payments during his bankruptcy, with an account balance of zero. *Id*. at ¶ 22. Plaintiff alleges that Defendant acknowledged the inaccuracy of its reporting overdue payments by correcting its reports. *Id*.

On March 15, 2012, Plaintiff obtained updated copies of his credit reports from all three CRAs. *Id*. at ¶ 25. Defendant reported that Plaintiff was up to date on payments during the pendency of his bankruptcy to Transunion and Equifax. *Id*. However, Defendant reported inaccurate overdue payments to Experian for December 2009 and January 2010. *Id*. Defendant has not corrected the report and does not include a notation that Plaintiff disputes the information. *Id*. at ¶ 25-26.

Based on these allegations, Plaintiff enumerates three causes of action:

1) <u>Violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b)</u>: Plaintiff claims that he disputed Defendant's inaccurate reporting of overdue payments reported during Plaintiff's bankruptcy. *Id*. at ¶ 32. Plaintiff alleges that Defendant was given notice of the dispute by all three CRA's, and that Defendant was therefore under a duty to reasonably investigate the dispute pursuant to 15 U.S.C. § 1681s-2(b). *Id*. Plaintiff alleges that Defendant did so, and concluded that the reporting was inaccurate. *Id*. at ¶ 33. Plaintiff alleges that Defendant was obligated to notify all three CRA's of its conclusion pursuant to 15 U.S.C. § 1681s-2(b)(1)(D)-(E). *Id*. at ¶ 34. Plaintiff alleges that Defendant violated that section by re-reporting the inaccurate overdue payments to Experian and by failing to report that the account was in dispute. *Id*. at ¶¶ 35-36. Plaintiff alleges that Defendant acted in willful and reckless disregard of its duty to refrain from reporting inaccurate information, consequently Defendant willfully and violated its duty to investigate Plaintiff's dispute pursuant to 15 U.S.C. § 1681(n)-(o). *Id*. at ¶ 37. As a result, Plaintiff alleges damages including the costs of obtaining and reviewing credit reports, traveling to and from counsel's office, sending demand letters, pain and suffering, difficulty obtaining credit, difficulty obtaining necessary products and services, humiliation, loss of sleep, anxiety, emotional distress, and defamation. *Id*. at ¶¶ 38-39.

2) <u>Violation of the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785.25(a)</u>: Based on the above facts, Plaintiff alleges that Defendant intentionally and knowingly reported inaccurate information to Experian when it re-reported the disputed overdue

payments and failed to notify Experian that the reported information was inaccurate before the end of thirty business days, in violation of California Civil Code § 1785.25(a). *Id*. at ¶¶ 43, 45. Plaintiff alleges that Defendant had reason to know that the information reported was inaccurate as a result of bankruptcy notices, dispute letters, the CDIA resource guide, and its own investigation. *Id*. at ¶ 44. Plaintiff alleges that Defendant acted knowingly and intentionally in reckless disregard of Plaintiff's rights. *Id*. at ¶ 46. Plaintiff alleges the same damages set forth in his first cause of action. *Id*. at ¶¶ 47-48.

        3) <u>Violation of the Unfair Business Practices Act ("UCL"), Cal. Bus. & Prof Code § 17200</u>: Plaintiff claims that Defendant's CCRAA violation was an unlawful business practice constituting a violation of the UCL. *Id*. at ¶ 62.

    **B.**     **Procedural History**

In its January 3, 2013 Amended Order, the Court dismissed the causes of action for FCRA, CCRAA, and UCL violations raised in the Complaint. Dkt. No. 32 ("Amended Order"), 1-2, 11-15. There, the Court construed the factual allegations as follows:

> After discovering inaccuracies in his credit report, Plaintiff sent Experian the April 21, 2011 letter requesting an investigation. Experian brought the matter to Defendant's attention, and Defendant thereafter reported the account in question was "Discharged through Bankruptcy Chapter 7," had a current account balance of $0, and was "closed" in the months of December 2009 and January 2010, as demonstrated by the Experian Report. At some time thereafter, Defendant adjusted its report to Experian to state that the account in question was "Closed at Consumer's Request; Bankruptcy Chapter 7," had a current balance and a past due balance of $0, and that the account was 30 days past due in December 2009 and 60 days past due in January 2010, as demonstrated by the Service 1st Report."

*Id*. at 11. The Court considered and rejected Plaintiff's arguments that the bankruptcy automatic stay or relation back of the discharge order made the report inaccurate. *Id*. at 8-10. First, the Court held "that the FCRA does not prohibit accurate reporting, after discharge, of debts that were delinquent during the pendency of a bankruptcy action. Whether or not the debt was collectible, the debt existed." *Id*. at 9. Second, the Court held, regarding the relation back argument, that "it is accurate to report, after discharge, that a debtor was delinquent during the pendency of a bankruptcy because at that time the debt existed. To avoid presenting a misleading picture, the creditor must also report that

the account was discharged through the bankruptcy and the outstanding balance on the account is zero." *Id*. at 10. The Court found that Plaintiff had not alleged any factual inaccuracies, noting that "Plaintiff does not allege that his account was up to date in December 2009 or January 2010." *Id*. Plaintiff was given leave to amend. *Id*. at 15.

### C. The Motion to Dismiss

Defendant argues that its credit reporting was accurate. Motion to Dismiss, 3-4. Defendant states that their report, attached to the original complaint, show that Plaintiff's account was discharged through bankruptcy and has an account balance of $0. *Id*. at 3. Defendant further states that it accurately reports that Defendant was delinquent during the months of December 2009 and January 2010, as Plaintiff was past due on the account in November 2009 and made no subsequent payments. *Id*. at 3-4 (citing RJN, Ex. 2).

Defendant states that "reports of delinquencies in payment while bankruptcy proceeding[s] are still ongoing is not 'incomplete or inaccurate' information." *Id*. at 6 (citing *Harrold v. Experian Solutions, Inc.*, 2012 WL 4097708, at *4 (N.D. Cal. Sept. 17, 2012)). Defendant notes that, in a case involving substantively identical allegations as the present one, a district court in the Northern District of California held that the plaintiff failed to state a claim under the FCRA as a matter of law because the creditor had not reported any inaccurate information. *Id*. (citing *Mortimer v. Chase*, 2012 WL 3155563, at *2-*6 (N.D. Cal. Aug. 2, 2012)). In a similar case, another district court reached the same conclusion. *Id*. at 7 (citing *Giovanni v. Bank of America*, 2012 WL 6599681, at *5-*6 (N.D. Cal. Dec. 18, 2012)). Defendant notes that this Court adopted the same reasoning in its Amended Order. *Id*. Defendant argues that this accurate reporting does not violate the automatic stay during the pendency of a bankruptcy. *Id*. at 8-9.

Defendant argues that the bankruptcy discharge does not render the previous, accurate, reporting of a debt inaccurate. *Id*. at 9-10. Defendant asserts that the discharge does not wipe away the fact that the debtor owed the debt, it merely eliminates the debtor's responsibility to pay it. *Id*. at 9 (citing *Vogt v. Dynamic Recovery Servs.*, 257 B.R. 65, 70 (Bankr. D. Colo. 2000) ("[i]t is apparent from the complaint in this case that the Plaintiffs believe that the effect of the order of discharge is to wipe away the debt. But that clearly is not the case … [T]he discharge does not wipe away the debt.

6

1 It only serves to eliminate the debtor's personal responsibility to pay the debt"); *In re Mahoney*, 368
2 B.R. 579, 584 (Bankr. W.D. Tex. 2007) ("[b]ankruptcy does not erase debt; the discharge is only an
3 injunction against attempts to collect the debt as a personal liability of the debtor"); *Evans v.*
4 *Mercedes Benz Fin. Servs., LLC*, 2011 U.S. Dist. LEXIS 79404, at *2-*3 (E.D. Mich. 2011) (plaintiff
5 failed to state a claim under the FCRA because the complaint, alleging wrongful reporting of accounts
6 on the basis that they had been discharged through Chapter 7 Bankruptcy, predated the discharge of
7 the debts through bankruptcy)). Defendant notes the Court's reasoning on this point in its Amended
8 Order. *Id*. at 9-10.
9       Defendant asserts that it is not required to report a meritless dispute to CRAs. *Id*. at 11 (citing
10 *Giovanni*, 2012 WL 6599681 at *4; *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th
11 Cir. 2009)). Defendant's note this Court's reasoning on this point in its Amended Order. *Id*. at 11-12.
12       Defendant argues that Plaintiff fails to state a cause of action under the CCRAA for the same
13 reasons Plaintiff failed to state a cause of action under the FCRA. *Id*. at 14. Likewise, Defendant
14 argues that Plaintiff's UCL claim fails for lack of standing and for failure to state a predicate claim.
15 *Id*. at 14-16.

16     **D.**    **Opposition**

17       Plaintiff argues that Defendant's reporting was inaccurate either because it was inaccurate on
18 its face or because it was materially misleading. Opposition, 4-5 (citing *Gorman*, 584 F.3d at 1163;
19 *Drew v. Equifax Info. Servs., LLC*, 690 F.3d 1100, 1108 (9th Cir. 2012)). First, Plaintiff states that
20 reporting that an account was delinquent while reporting that there was zero past due balance in the
21 same time period is inaccurate. *Id*. at 5-7 (citing *Philbin v. Transunion Corp.*, 101 F.3d 957, 960, 966
22 (3d Cir. 1996) (first credit report listed delinquencies, second credit report removed all delinquencies,
23 third credit report listing the same delinquencies contained in the first credit report was inaccurate);
24 *Grantham v. Bank of America, N.A.*, 2012 U.S. Dist. LEXIS 167439, at *9 (N.D. Cal. Nov. 26, 2012)
25 (credit report showing overdue payment listed in the same month as zero balance is sufficient to
26 demonstrate, in the context of a motion to dismiss, an inaccuracy for the purpose of the FCRA,
27 rejecting argument that the overdue payment notation was accurate because no timely payment was
28 made before creditor later zeroed out the balance)).

Second, Plaintiff argues that the filing of a bankruptcy petition renders overdue payment notations after the filing date inaccurate under the FCRA. *Id*. at 7. Plaintiff states that the voluntary Chapter 7 bankruptcy petition initiates an "order for relief" under that chapter. *Id*. (citing 11 U.S.C. § 301(b)). The order for relief serves two purposes. *Id*. First, it triggers the automatic stay. *Id*. at 7-8 (11 U.S.C. § 362(a)). The automatic stay prevents the creditor from attempting to collect on the underlying debt. *Id*. at 8-9 (citing *Bell v. Clinic Labs of Hawaii, LLP*, 2008 Bankr. LEXIS 4730, at *2, *7 (9th Cir. B.A.P. 2008) (creditor willfully violated the automatic stay by turning debtor's account over to a collection agency and permitting the reporting of derogatory credit information)). Plaintiff argues that the court in *Mortimer* erred in holding that reporting delinquencies during the pendency of a bankruptcy did not violate the FCRA because there is no obligation to make such payments in view of the automatic stay. *Id*. at 9. Plaintiff notes that the automatic stay specifically limits the reporting of derogatory credit information to allow only "overdue support owed by a parent." *Id*. (citing 11 U.S.C. § 362(b)(2)(e)). Plaintiff asserts that allowing reporting in violation of the automatic stay will force the debtor to make timely payments throughout the pendency of the bankruptcy. *Id*. at 10. Second, the order for relief affords the debtor an opportunity for discharge that, absent an exception or some type of debtor misconduct, must be granted. *Id*. at 8 (citing *In re Way*, 2 B.R. 372, 373 (Bankr. N.D. Ohio 1982)). The order permanently replaces the temporary stay. *Id*. at 12 (citing 11 U.S.C. § 727(b); *In re Am. Hardwoods, Inc.*, 885 F.2d 621, 626 (9th Cir. 1989)). The order relates back to the filing date, relieving the debtor from any further personal liability on the discharged prepetition debt. *Id*. (citing *Boeing. N. Am., Inc. v. Ybarra*, 424 F.3d 1018, 1022 (9th Cir. 2005); *In re Holland*, 21 B.R. 681, 688 (Bankr. N.D. Ind. 1982)). Plaintiff argues that, after the discharge is entered, continued reporting of overdue payments postdating the filing date inaccurately suggest that Defendant still has the ability to enforce the debt. *Id*. at 13 (citing *Torres v. Chase Bank USA, N.A.*, 367 B.R. 478, 486 (Bankr. E.D.N.Y. 2007); *Montgomery v. PNC Bank, N.A.*, 2012 WL 3670650, at *3 (N.D. Cal. Aug. 24, 2012)). Plaintiff contends that reporting payments as overdue in the period between the filing date and the entry of discharge would only be permitted if the discharge was effective on the date of discharge, discharging all debts accrued during the pendency of the bankruptcy. *Id*.

Third, Plaintiff argues that Defendant cannot report delinquencies during the pendency of a bankruptcy because it follows the Metro 2 Format, under which it does not report a debt unless that debt is presently collectible. *Id*. at 10-12 (citing Declaration of Elliot Gale, ¶ 4). Fourth, Plaintiff states that the delinquencies are inaccurate because he alleged that he made timely payments. *Id*. at 17.

Based on these inaccuracies, Plaintiff argues that he has established causes of action under the FCRA, CCRAA, and UCL. *Id*. at 14-18.

## III. ANALYSIS

### A. Legal Standard

Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief … shall contain … a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and takes "all allegations of material fact as true and construe(s) them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The factual allegations must be definite enough to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. However, a complaint does not need detailed factual allegations to survive dismissal. *Id*. Rather, a complaint need only include enough facts to state a claim that is

"plausible on its face." *Id*. at 570. That is, the pleadings must contain factual allegations "plausibly suggesting (not merely consistent with)" a right to relief. *Id*. at 557 (noting that this requirement is consistent with Fed. R. Civ. P. 8(a)(2), which requires that the pleadings demonstrate that "the pleader is entitled to relief").

"A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Moreover, the court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**C.      FCRA**

For the reasons set out below, Plaintiff has not adequately pled a cause of action under the FCRA.

**1.      Background Law**

The FCRA was enacted to promote the equitable use of consumer credit information and to ensure fairness and accuracy within the credit reporting system. 15 U.S.C. § 1681. To achieve this purpose, the FCRA imposes certain duties on the furnishers that provide credit information to CRAs. *Gorman*, 584 F.3d at 1153.

Section 1681s-2(a) requires furnishers "to provide accurate information." 15 U.S.C. § 1681s-2(a). Specifically, subsection (a) prohibits furnishers from reporting information with actual knowledge of errors, requires furnishers to correct and update information, and requires furnishers to provide notice of disputes and closed accounts, among other requirements. 15 U.S.C. § 1681s-2(a)(1)-(3). The information is "inaccurate or incomplete" within the meaning of the statute if it is "patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Gorman*, 584 F.3d at 1163.

1    Section 1681s-2(b) establishes the duties of furnishers after receiving notice of a dispute. 15
2 U.S.C. § 1681s-2(b). Upon receiving notice of a dispute from a CRA, the furnisher shall (1) conduct
3 an investigation of the disputed information; (2) review all relevant information provided by the
4 agency; (3) report the results of the investigation to the CRA; (4) if the results of the investigation
5 reveal that the information is incomplete or inaccurate, report those results to all other CRAs to which
6 the person furnished information; and (5) if an item of information disputed by a consumer is found to
7 be inaccurate or incomplete or cannot be verified after reinvestigation, for purposes of reporting to a
8 consumer reporting agency only, as appropriate, modify, delete, or permanently block reporting of
9 that item of information. 15 U.S.C. § 1681s-2(b)(1). A furnisher does not report incomplete or
10 inaccurate information by failing to report a meritless dispute. *Gorman*, 584 F.3d at 1163.

11   The FCRA confers a private right of action upon consumers and allows them to sue a furnisher
12 of credit information if such furnisher willfully or negligently fails to comply with any of the duties
13 enumerated in section 1681s-2(b). *See Gorman*, 584 F.3d at 1154; 15 U.S.C. §§ 1681n, 1681o. A
14 furnisher's duties "arise only after the furnisher receives notice of dispute from a CRA." *Gorman*,
15 584 F.3d at 1154. "To state a claim under the FCRA against the Defendants as a furnisher of credit
16 information, the Plaintiff must allege that: (1) he contacted the CRA; (2) the CRA pursued the claim;
17 and (3) the CRA contacted the Defendants regarding the dispute, triggering the Defendants' duty to
18 investigate." *King v. Bank of America, N.A.*, 2012 WL 4685993, at *5 (N.D. Cal. Oct. 1, 2012) (citing
19 *Roybal v. Equifax*, 405 F.Supp.2d 1177, 1180 (E.D. Cal. 2005); *Nelson v. Chase Manhattan Mortg.*
20 *Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002)). Duties imposed on furnishers under subsection (a) are
21 enforceable only by federal or state agencies. *Gorman*, 584 F.3d at 1154.

22   When a violation of section 1681s-2(b) occurs, a plaintiff may base his allegations on
23 negligent noncompliance (§ 1681o) and/or willful noncompliance (§ 1681n) of section 1681s-2(b).
24 Under section 1681o, a person who negligently violates the FCRA is liable in an amount equal to the
25 sum of "any actual damages sustained by the consumer as a result of that violation" plus costs and
26 attorney's fees. Some courts have thus required a plaintiff to plead actual damages in order to allege
27 an FCRA claim based on a negligent violation. *See Johnson v. CGR Servs., Inc.*, 2005 WL 991770,
28 at *2 (N.D. Ill. Apr. 7, 2005) ("The FCRA does not explicitly limit the 'actual damages' recoverable

11

1  under the statute and Plaintiff does not need to plead her damages with heightened particularity.
2  However, the Complaint needs at least to give the other party some notice as to what her actual
3  damages could possibly be."); *Martin v. Asset Acceptance, LLC*, 2012 WL 3042524, at *2-3 (N.D.
4  Ill. July 25, 2012); *Engel v. Scully & Scully, Inc.*, 279 F.R.D. 117, 125-126 (S.D.N.Y. 2011). Under
5  section 1681n, a person who "willfully" violates the FCRA may seek either actual damages or
6  "damages of not less than $100 and not more than $1,000," as well as punitive damages and
7  reasonable attorney's fees. 15 U.S.C. § 1681n(a)(1)(A). Because a plaintiff may recover actual or
8  statutory damages under section 1681n, that section does not require a plaintiff to allege actual
9  damages. *See Martin*, 2012 WL 3042524, at *4.

### 2. Application of Law to Facts

#### a. Credit Reporting Inaccuracies

The core dispute is whether Defendant reported inaccurate information when it reported that Plaintiff's account was delinquent during the pendency of his Chapter 7 bankruptcy. Plaintiff contends that the alleged reporting was inaccurate for six reasons: (1) the account was up to date prior to Plaintiff's bankruptcy filing; (2) the credit reporting was inconsistent; (3) reporting delinquencies during the pendency of a bankruptcy violates of the automatic stay; (4) the bankruptcy discharge order discharged the debt as of the initial filing date, rendering any reported delinquencies that post-date the initial filing date inaccurate; (5) Defendant failed to comply with the Metro 2 Format; and (6) delinquencies are only reported when an account is in collectible status. Whether the reports contained inaccurate information is a question of law. For the reasons stated below, the Court concludes that the FAC fails to adequately plead inaccurate credit reporting.

#### i. The Bankruptcy Theories

Plaintiff raises arguments, addressed in this Court's Amended Order, that the bankruptcy code renders reporting of a delinquent debt during the pendency of a bankruptcy, or later reporting that a debt was delinquent during the pendency of a bankruptcy, inaccurate for the purposes of the FCRA. To the extent that the debt was in fact delinquent during the pendency of the bankruptcy, the Court again rejects these arguments.[2]

---
[2] In so doing, the Court does not address the distinct issue of whether the accurate reporting was in violation of the automatic stay or the bankruptcy discharge.

12

### AA. Automatic Stay

The Court declines to revisit issues pertaining to the automatic stay that it addressed in its Amended Order. The automatic stay does not render an otherwise accurate report of a delinquency inaccurate for the purposes of the FCRA. As the Court previously stated:

> Several courts, including two in this district involving closely analogous factual situations, have held that reports, after discharge, of delinquencies in payment during the bankruptcy proceedings are not "incomplete or inaccurate" information for the purposes of the FCRA. *Giovanni v. Bank of America, N.A.*, 2012 WL 6599681, at *5-*6 (N.D. Cal. Dec. 18, 2012); *Mortimer*, 2012 WL 3155563 at *3-*4; *see also Harrold v. Experian Information Solutions, Inc.*, 2012 WL 4097708, at *4 (N.D. Cal. Sept. 17, 2012); *Evans*, 2011 WL 2936198 at *2-3 (Plaintiff failed to state a claim under the FCRA because the complaint, alleging wrongful reporting of accounts on the basis that they had been discharged through Chapter 7 Bankruptcy, predated the discharge of the debts through bankruptcy); *In re O'Connell*, 2008 WL 5046496, at *1 (Bankr. D. Ariz. Oct. 29, 2008) (discharge of debts through bankruptcy acts only as a bar to a creditor's right to enforce debt; a creditor's derogatory remarks to its credit bureaus are not inaccurate if what it is reporting are simply the facts of non-payment and prior delinquencies). This Court agrees that the FCRA does not prohibit the accurate reporting, after discharge, of debts that were delinquent during the pendency of the bankruptcy action. Whether or not the debt was collectible, the debt existed. Reporting this information is neither inaccurate nor misleading.

Amended Order, 8-9.[3]

### BB. The Bankruptcy Discharge

Plaintiff's arguments regarding the effect of the bankruptcy discharge order do not affect the Court's conclusion in its Amended Order. As the Court previously stated:

> Subject to certain exceptions, discharge pursuant to Section 727(a) "discharges the debtor from all debts that arose before the date of the order for relief…" 11 U.S.C. § 727(b). However, this does not change the underlying fact that, during the pendency of the bankruptcy, the account was delinquent. *See In re O'Connell*, 2008 WL 5046496, *1. Thus, it is accurate to report, after discharge, that a debtor was delinquent during the pendency of bankruptcy because at that time the debt existed. To avoid presenting a misleading picture, the

---

[3] Plaintiff forcefully argues that reporting delinquencies during the pendency of a bankruptcy violates the automatic stay and undermines the purposes of the bankruptcy code by forcing debtors to pay the underlying debt to avoid harmful credit reporting during the pendency of the bankruptcy action. However, the question before the Court is whether Defendant reported accurate information, not whether Defendant violated the bankruptcy code. *See Bell*, 2008 Bankr. LEXIS 4730, at *7-*8 (relying in part on negative reporting to CRA's to find a willful violation of the automatic stay). Plaintiff attempts to avoid this distinction by arguing, without citation to authority, that because the account was not collectible reporting the account as delinquent is misleading. This unsupported argument is contrary to the authority this Court found persuasive in resolving this same issue in its Amended Order.

creditor must also report that the account was discharged through the bankruptcy and the outstanding balance on that account is zero.

Amended Order, 9-10.

Plaintiff states that the discharge order relieved Plaintiff of any personal obligation to pay Defendant as of the date of the filing of the bankruptcy petition. *See* 11 U.S.C. § 524(a)(2) ("A discharge in a case under this title … operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived"). Plaintiff argues that reporting, after entry of the bankruptcy discharge, that Plaintiff was delinquent on an account during the pendency of bankruptcy inaccurately suggests that Defendant still has the ability to enforce the discharged debt personally against Plaintiff. Plaintiff expresses the concern that end users will interpret the report to mean that Plaintiff incurred new debt during bankruptcy or that Plaintiff reaffirmed the debt notwithstanding the discharge. However, Plaintiff does not cite any authority in which a court concluded that a creditor violated the FCRA by reporting a delinquency in the time period between the initiation of bankruptcy and the entry of the discharge order.

In *Montgomery*, the most analogous decision on which Plaintiff relies, the court held that the plaintiff sufficiently alleged that the defendant reported inaccurate information when it reported that the plaintiff was delinquent in payment in the months after the bankruptcy discharge. *Montgomery*, 2012 WL 3670650 at *3. The court did not discuss whether alleged reporting of delinquencies between the initiation of bankruptcy proceedings and the ultimate discharge was inaccurate. *Id*.

Plaintiff also relies on *In re Torres*. In that case, the court dismissed the plaintiffs' FCRA causes of action for lack of subject matter jurisdiction but concluded that the plaintiffs had stated a claim for violation of 11 U.S.C. § 524(a)(2) on the basis of the defendant's credit reporting. *In re Torres*, 367 B.R. at 482, 491. In *Torres*, the creditor had not updated the credit reports to indicate the effect of the bankruptcy discharge. *Id*. at 483-484. Instead, the report continued to show a balance owing in excess of $2,000 and stated that one of the accounts at issue had been "charged off/Past due 150 days" and that the other had been "Charged Off as Bad Debt." *Id*. at 483. The plaintiffs alleged a pattern of conduct whereby the defendant misrepresented that debts discharged in bankruptcy cases

14

are outstanding and past due. *Id*. at 484. Plaintiff relies on *In re Torres* for the proposition that "a credit report that continues to show a discharged debt as 'outstanding,' 'charged off,' or 'past due' is unquestionably inaccurate and misleading, because end users will construe it to mean that the lender still has the ability to enforce the debt personally against the debtor, that is, that the debtor has not received a discharge, that she has reaffirmed the debt notwithstanding discharge, or that the debt has been declared non-dischargeable." *Id*. at 487-488. The court distinguished between users treatment of historical facts, such as a bankruptcy discharge, and notations indicating a past due debt that remains owing. *Id*. at 488 (citing *In re Helmes*, 336 B.R. 105, 107-108 (Bankr. E.D. Va. 2005) (reporting a debt as past due with an increasing outstanding balance during the pendency of bankruptcy and for a short period after the bankruptcy order was filed is inaccurate; distinguished between a "past due" notation and a "discharged in bankruptcy" notation)).

To the extent that Plaintiff's account was delinquent in December 2009 and January 2010, *In re Torres* does not support Plaintiff's conclusion that the reporting in this case was inaccurate. The challenged report lists accurate historical facts: that the account was delinquent in December 2009 and January 2010 and that the account was discharged through bankruptcy in February 2010. These "Late Dates" are reflected in a summary table of "HISTORICAL STATUS" listing the number of times the account was past due. The report shows $0 is presently past due, and reflects in two locations that the account was closed via bankruptcy. Regardless of whether the debt owed in December 2009 and January 2010 was subsequently retroactively discharged, the historical fact remains that Plaintiff's account was delinquent in those months. As the Court concluded in its Amended Order, the report contains only accurate information and is not misleading.[4] This conclusion is supported by two decisions in this district, which found no violation of the FCRA where the creditor reported delinquencies only during the pendency of the bankruptcy action. *See Mortimer*, 2012 WL 3155563 at *1-*2, *4; *Giovanni*, 2012 WL 6599681 at *1, *5-*6.

                        **ii.     Failure to Comply with the Metro 2 Format**

Plaintiff argues that failure to comply with the Metro 2 Format promulgated by CDIA renders the report inaccurate. Plaintiff argues, without citing authority, that reporting a delinquency as

---

[4] The different question of whether Defendant issued the reports in question with the intent to collect on the underlying debt in violation of 11 U.S.C. 524(a)(2) is not relevant to the accuracy of the report for the purposes of the FCRA.

15

opposed to "no data" during the pendency of the bankruptcy will convey a misleading message because the CDIA guidelines state that "no data" is the proper entry. To the extent that the account was delinquent during the pendency of the bankruptcy, failure to comply with the CDIA guidelines does not render the report incorrect. Moreover, Plaintiff has not pled in the FAC that non-compliance with the CDIA guidelines was misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions. *See Gorman*, 584 F.3d at 1163. Nor has Plaintiff pled any facts to demonstrate that non-compliance with the CDIA guidelines was misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions. For example, Plaintiff has not pled any basis to conclude that any entity would be misled by Defendant's reporting, or that any entity would have expected Defendant to report in compliance with the CDIA guidelines. As pled, Defendant's alleged noncompliance with the Metro 2 Format is an insufficient basis to state a claim under the FCRA.

### iii. New Factual Allegations

Plaintiff argues that three new factual allegations are each independently dispositive. These are: (1) that Plaintiff's account was up to date through November 2009; (2) that Defendant reported a $0 account balance owing in December 2009 and January 2010 while reporting delinquencies in those same months; and (3) that creditors only report an account as delinquent when that account is collectible. As discussed below, Plaintiff has not plausibly alleged an inaccuracy.

Although the first factual allegation states an inaccuracy if taken as true, Plaintiff's counsel clarified at the hearing that the basis for alleging that the account was up to date was the pending bankruptcy. Plaintiff's counsel further clarified that no payments were made on the account during the bankruptcy, such that Plaintiff's counsel conceded that the late payments would have been accurate in the absence of the bankruptcy. The Court has already concluded that the pendency of the bankruptcy did not render the reporting of late payments inaccurate.[5] Because the first allegation is predicated on a legal argument this Court has rejected, the first allegation does not state a claim for relief.

---

[5] As above, the Court expresses no opinion as to whether the reporting violates the automatic stay or the bankruptcy discharge.

Second, following bankruptcy, Defendant reported that Plaintiff owed $0 on the account in the months of December 2009 and January 2010, and that the account had been discharged through bankruptcy in February 2010. Plaintiff relies on *Grantham* for the proposition that this reporting was inaccurate. In that case, the court concluded that Plaintiff pled inaccuracy based on the allegation that the report listed a $0 balance in the same month as a delinquency. *See Grantham*, 2012 WL 5904729 at *3.[6] This Court disagrees. Plaintiff has alleged that he owed Defendant a debt of $784.00 entering bankruptcy. FAC, ¶ 13. At the hearing, Plaintiff's counsel did not dispute that the debt existed during the pendency of the bankruptcy or that no payments were made. The Court cannot conclude, in light of the allegations of the complaint, that, on the basis of this purported inconsistency, the late payment notations are inaccurate.

The third new factual allegation does not render the credit report misleading. Plaintiff alleges that overdue payments are only reported when the account is in a collectible status. The overdue payments in this instance were, and continue to be, reported after the bankruptcy discharge, when the account is not collectible. Even taking that allegation as true, the credit report here cannot be misleading. The report cannot support the misleading inference that the account is collectible, because the credit report clearly reflects that the account was discharged through bankruptcy and has an outstanding balance of $0.

### b. FCRA Violation

As discussed above, the information contained in Plaintiff's credit report was factually accurate and not misleading. Thus, Plaintiff's claim is without merit. As Plaintiff has already been afforded one opportunity to amend his complaint to state an inaccuracy but has failed to do so, his FCRA cause of action is dismissed with prejudice.

### D. CCRAA

#### 1. Background Law

California Civil Code section 1785.25(a) provides: "A person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or

---

[6] Another court in this district rejected the same argument in the context of a motion to dismiss, concluding that, drawing all inferences in the plaintiff's favor, only the report that there was $0 balance due on the account was inaccurate. *See Giovanni*, 2012 WL 6500681, at *6.

17

should know the information is incomplete or inaccurate." Cal. Civ. Code § 1785.25(a). The CCRAA differs from the FCRA in that it provides a private right of action to enforce this provision. Cal. Civ. Code § 1785.25(g); Cal. Civ. Code § 1785.31; *Gorman*, 584 F.3d at 1171.

### 2. Application of Law to Facts

As discussed above, Plaintiff has not alleged that Defendant made an incomplete or inaccurate report. As Plaintiff has already been afforded one opportunity to amend his complaint to state an inaccuracy but has failed to do so, his CCRAA cause of action is dismissed with prejudice.

### E. UCL

As discussed above, Plaintiff failed to make out a cause of action under the CCRAA. His UCL claim is based on an alleged violation of the CCRAA. As Plaintiff has already been afforded one opportunity to amend his complaint to state a cause of action under the CCRAA and has failed to do so, his UCL claim is dismissed with prejudice.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED. The clerk is directed to close the file.

IT IS SO ORDERED.

Dated: April 10, 2013

_____

JOSEPH C. SPERO
United States Magistrate Judge